## A. BOWDLE HIGHLEY *v.* PRATT D. PHILLIPS ET AL.

[No. 11, April Term, 1939.]

*Decided April 27th, 1939.*

The cause was argued before BOND, C. J. OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*V. Calvin Trice*, for the appellant.

*L. Claude Bailey*, with whom were *L. Creston Beauchamp* and *Miles, Bailey & Williams* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

On May 16th, 1935, the appellant entered into a written agreement with the appellees as follows:

"This agreement made this 16th day of May, A. D. 1935, by and between Pratt D. Phillips and H. Lay Phillips, trading as Phillips Brothers hereinafter called the party of the first part and A. Bowdle Highley, hereinafter called the party of the second part.

"Witnesseth; That the party of the first part and the party of the second part for the following considerations hereinafter named agree as follows:

Whereas, the party of the first part is desirous of purchasing dirt from the party of the second part, and

"Whereas, A. Bowdle Highley is the owner of a certain tract of land in Trappe District, Talbot County, Maryland, bounded on the south by the county road leading from Trappe to Cambridge Ferry Farm and on the east and north by the land of D. C. Kirby being a triangular tract of land and a part of the Porpoise Creek Farm.

"The party of the first part agrees to purchase and the party of the second part agrees to sell all the dirt within the limits of the described tract of land without restriction.

"And the party of the first part has paid to the party of the second part the sum of Five Hundred ($500.00) Dollars in full and final settlement for said dirt and the receipt for the same is hereby acknowledged.

"It is mutually agreed and understood by the parties hereto that the party of the first part shall have the right—ingress and egress to and from said land with *any equipment which may be necessary to move the dirt.*

"It is further mutually agreed and understood by the parties hereto that the Contract with all its agreements, covenants, conditions and rights shall cease on January 1, 1937.

"Witness our hands and seals this 16th day of May, A. D. 1935.

"Test:
A. Bowdle Highley,
"Phillips Bros.,
"By H. Lay Phillips."

The record does not disclose the character of the top or surface soil of the land described in the agreement at the time the same was executed, nor does it disclose the depth to which the same was excavated and removed, before a stratum of sub-soil, commonly known as sand, was reached.

When that discovery was made the appellant, contending that the term "dirt", as used in the above agreement, did not embrace the type of soil commonly known as sand, brought the suit against the appellees, from which this appeal arises.

As finally amended, the declaration is based upon a single count in assumpsit, namely; for goods bargained and sold by the plaintiff to the defendants; the same being supplemented by a bill of particulars, which, in substance, sets forth that between the 20th day of May, 1935, and the date of the institution of suit, the plaintiff sold the defendants approximately 10,000 tons of sand at the price of twenty-five cents per ton; and that said sand was accepted by the defendants and used by them in the construction of a section of Maryland state road; and that although the defendants had used said sand, as indicated, and had been paid for the same by the State Road authorities, the said defendants refused to pay the plaintiff for the sand, wherefore the suit was instituted. The general issue pleas of never promised and never

indebted as alleged were filed to the above declaration, and issue accordingly joined. It may be added that the suit was originally brought in the Circuit Court for Wicomico County, and by successive removals, finally sent to the Circuit Court for Somerset County, for trial.

At the trial below, seven exceptions were reserved by the appellant upon the court's rulings on evidence, and one to its ruling in granting a prayer for directed verdict, offered at the close of the plaintiff's case. It being our conclusion that the latter ruling was without error, it will, therefore, be now considered.

The appellant testified that in the year 1935 the appellees constructed a section of Maryland State road between the village of Trappe and the northern end of a bridge over the Great Choptank River, in Talbot County, and they secured all sand used in the construction of said road from a part of a farm known as "Porpoise Creek," which the witness owned.

Carefully avoiding, in his testimony in chief, any statement tending to show that the sand in question was removed from that part of the above farm described in the contract, and any reference to the said contract, the witness further testified that the fair market value of sand, such as the appellees removed from his land, was twenty-five cents per ton; that the appellees had not paid him for the sand and that it was used for "concrete mix," in the construction of a concrete road between the two points above mentioned.

On cross examination, and over objection of his counsel, the witness was shown the aforegoing agreement, and admitted his signature to the same. The description of the particular land mentioned in the agreement was then read to him, and he was asked: Whether the sand which he had testified was removed from his premises by the appellees, was excavated and removed from the particular piece or parcel of land mentioned and described in the agreement? His reply to that inquiry was in the affirmative, and his further testimony tended to show, definitely, that no form of earth of any kind was removed

from land belonging to him, by the appellees, other than the land described in the agreement; nor was such earth removed therefrom either prior to May 16th, 1935, or subsequent to January 1st, 1937, in accordance with the terms of the agreement.

H. Lay Phillips, one of the appellees, and the only other witness called by the appellant, testified that his firm constructed the section of state road above mentioned; that it was a concrete road; that in width it was either 16 or 20 feet; that in length it was 4.54 miles; that the thickness of the concrete was 7 inches in the center and 9 inches on the shoulders, and that all the sand used for concrete purposes in the construction of the road was obtained from the land described in the agreement with the appellant.

As has been indicated, the primary and controlling question raised by this appeal involves the propriety of the ruling of the trial court on the demurrer prayer offered at the close of the plaintiff's case, and in that connection, because of the nature of the prayer, any conflict in the evidence should be resolved in favor of the appellant, and the truth of all evidence, and such inferences, as may naturally and legitimately be deduced therefrom, tending to support the appellant's right of recovery should, of course, be assumed. *Clough & Molloy v. Shilling*, 149 Md. 189, 131 A. 343; *Lashley v. Dawson*, 162 Md. 549, 160 A. 738; *Armiger v. Baltimore Transit Co.*, 173 Md. 416, 196 A. 111. However, there is no conflict in the evidence in the instant case. The appellant admits his execution of the aforegoing agreement with the appellees, and, regardless of whatever other character of soil they may have removed from the described land, the appellees admit that they did excavate, and remove from the land described in the agreement, earth possessing characteristics of what is commonly known as sand; that it was of sufficient quality for the purposes of the manufacture of concrete, and it is conceded that, from the described area and within the period prescribed by the agreement, a sufficient quantity of sand was removed

by the appellees for the construction of the above described section of state road.

In the last analysis, therefore, the sole question before us on this appeal resolves itself into the construction of the word "dirt" as the same is used in the aforegoing agreement. Stated differently, if it be determined that the term "dirt" is synonymous with the term "sand," the conclusion is inevitable that the appellees were within their rights when they excavated and removed the earth or material indicated, under the conceded facts in the case. Furthermore, it would seem that this observation is strengthened when it is noted that, by the terms of the contract, the appellant sold and the appellees purchased "all the dirt within the limits of the described tract of land without restriction."

Lexicographers uniformly, and in most cases primarily, define the word "dirt" as representing "filth or excrement." Secondarily, however, it is thus defined, as for example: "Loose earth," "garden loam" New Standard Dictionary: "Loose earth or soil," Webster's New International Dictionary; "Earth or soil, especially when loose," New Century Dictionary. And among other definitions, found in The Winston Universal Reference Library, the word is defined as being "dust, loose soil, and garden earth."

It will thus be noted that, aside from the primary significance of the word, various authorities define "dirt" as being, in effect, synonymous with the word "earth" and "soil." And in *Black's Law Dictionary*, (2nd Ed.) p. 408, the word "Earth" is defined as follows: "Soil of all kinds including gravel, clay, loam, and the like, in distinction from the firm rock." To the same effect in *Bouvier's Law Dictionary*, (Rawles 3rd Revision), vol. 1, p. 967, the latter term is defined as being: "Clay, gravel, loam, and the like, in distinction from the firm rock." It being added that "the term also includes hardpan, which is a hard stratum of earth."

In brief, the authorities generally treat the words "dirt" and earth as representing interchangeable terms,

each of them signifying "loose earth" as distinguished from the "firm rock."

Urging that the court below committed error in ruling, as a matter of law, that the words, "all the dirt within the limits of the described tract of land without restriction," as found in the above agreement, included sand, the appellant contends that the question should have been submitted to the jury as one of fact; and that further error was committed by the trial court's rejection of his proffer tending to show a custom, among contractors engaged in road construction, to differentiate between the terms "dirt" and "sand," and to regard the latter as not being embraced within the sphere of the former.

In *Roberts v. Bonaparte,* 73 Md. 191, 20 A. 918, 919, it is said: "The general rule undoubtedly is that the construction of all written documents is a question of law for the court, and, when a contract is sought to be made out from such documents alone, it is for the court to ascertain and determine its construction, whether the documents are many or few."

In *Bond v. Humbird,* 118 Md. 650, 85 A. 943, after quoting, with approval, the above statement of the law, it was said: "The object of all judicial interpretation is to discover and declare the intention of the parties as expressed in the written documents. Obviously the most simple and satisfactory way to ascertain that intention is to read what they have written in the light of surrounding circumstances existing at the time. What they meant to say must be gathered from what they did say, as viewed from the standpoint they then occupied." *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540, 96 A. 762; *Severin v. Robert S. Green,* 166 Md. 305, 170 A. 731.

And in 1 *Greenleaf on Evidence* (16th Ed.), sec. 278, the author says: "The terms of every written instrument are to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject-matter, as by the known usage of trade, or the like, acquired a peculiar sense, distinct from the

popular sense of the words; or unless the context evidently points out that in the particular instance, and in order to effectuate the immediate intention of the parties, it should be understood in some other and peculiar sense."

Parol contemporaneous evidence is of course inadmissible to contradict or vary the terms of a valid written instrument. But proof of usage is admitted, either to interpret the meaning of the language of the contract, or to ascertain the nature and extent of the contract, in the absence of express stipulations and where the meaning is equivocal and obscure. In all cases of this sort, however, the rule for admitting the evidence of usage or custom must be taken with the qualification that the evidence be not repugnant to, or inconsistent with, the contract; for otherwise it would not go to interpret and explain but rather to contradict that which is written. 1 *Greenleaf on Evidence,* (16th Ed.) sec. 294.

The object of the court in construing a contract is to ascertain and effectuate the intention of the parties, as appears from the whole agreement. And for that purpose it will look at the time when, and circumstances under which, the agreement was made—its subject-matter, the relation of the parties, and the object to be accomplished, in order to ascertain their intentions. In other words, it is a principle of universal application that, in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into, and that general or indefinite terms employed in the instrument may be thus explained or restricted in their meaning and application *Brantly on Contracts,* (2nd Ed.) sec. 128; *First Nat. Bank v. Gerke,* 68 Md. 449, 13 A. 358; *Bothwell v. Standard Printing & Publishing Co.,* 143 Md. 303, 122 A. 195.

In the above connection, it should also be borne in mind that: "Words will be given their ordinary meaning when nothing appears to show that they are used in a different sense, and no unreasonable or absurd consequences will result from doing so. Words chosen by the contracting

parties should not be unnaturally forced beyond their ordinary meaning or given a curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind can discover. * * * Before the rule for choosing between two meanings of a word or expression can properly be applied, it must be determined that the meaning intended by the parties is obscure, viewing such word or expression in the light of the whole contract and from the standpoint of the parties when it was made. Judicial interpretation of a contract does not reach a point where the meaning of some significant word can be said to be in doubt and it is permissible to assign thereto one of two meanings either of which is within the reasonable scope thereof, upon merely arriving at a conclusion that such word may, as an abstract proposition, be given either of two meanings. A word in a contract, taken by itself, often admits of two meanings when from the whole contract to be interpreted there is no reasonable doubt as to the sense in which the parties used it. In that situation, the particular sense they ascribed to the word when the contract was made must be adopted if it is within the reasonable scope thereof." 12 *Am.Jur.* sec. 236.

Applying the aforegoing principles to the instant case with due regard to the facts as disclosed by the record, the decisive question before us is whether error was committed by the trial court in granting the defendant's prayer.

Reference to the agreement alone discloses that one of the parties thereto was the owner of a tract of land located in Talbot County, Maryland, and that the other party was desirous of purchasing dirt from said owner. For the stipulated consideration of five hundred dollars, receipt of which was acknowledged by the vendor at the time of the execution of the agreement, the vendor sold all the dirt within the limits of a described tract of land, which the record shows contained from two to two and a quarter acres, "without restriction;" with the full right to excavate and remove the same over a period of nine-

teen and one half months. The document is silent as to the purposes for which the dirt was purchased, and it is equally silent as to the business in which the purchasers were engaged at the time of the execution of the contract. But the record reveals a state of facts which warrants the assumption that the purchasers were, at the time of the execution of the agreement, engaged in the construction of state highways, and that the vendor was fully cognizant of that fact when he entered into the agreement.

There is no reference, whatever, as to the character, quality, or quantity of material which, under the terms of the contract, the purchasers were authorized to remove from the described area, within the prescribed period, other than the term "dirt," which, as has been observed, in its broader significance lexicographers define as being "loose earth," in contradistinction to a narrow or restricted sense—"filth" or "excrement."

It is not for the court, in the construction of such a contract, to speculate as to whether the purchasers were in quest of what is commonly called and known among road builders as "fill," or whether they were seeking sand when they entered into the agreement. They did not indicate in the contract for what purpose they made the purchase, and the record indicates that they could use both. Had it developed that they could not use the sand in their road building project, or in any other manner, would it be logical in an appropriate suit to hold that the seller must refund the purchase price to the purchasers upon the theory that sand was not dirt? We think not.

As was well said in the case of *Ullman v. Chicago & N. W. R. Co.*, 112 Wis. 150, 88 N.W. 41, by Judge Marshall, of the Wisconsin Supreme Court: "If mere ambiguity of expression were always taken as justifying a court in choosing between two meanings of a particular word or collection of words, either of which is within the reasonable scope therof, the primary purpose of judicial construction—that of determining the intention of the

474

parties in regard to the subject for construction, so far as the same can be located within the reasonable meaning of the language they chose to use—would often fail of accomplishment. There is often ambiguity of expression in a written contract or other writing when the meaning is plain, leaving no room for a selection to be made between two meanings for the purpose of arriving at the intention of the parties thereto. Words in their literal sense, if so applied, may lead to such an absurd result as to obscure the real meaning; and again, words in a contract, when taken in their literal sense, may be obscure in meaning and such obscurity entirely disappear when a view is taken from the standpoint of the parties in reducing their agreement to writing."

Inasmuch as the court is the proper tribunal for the construction of written contracts in which, as in the instant case, the terms are undisputed, we are of the opinion that the proffer to vary the terms by testimony designed to contradict the expressed provisions was properly rejected, and, further, that the demurrer prayer was properly granted.

Accordingly, it is unnecessary to consider the remaining exceptions.

*Judgment affirmed, with costs to the appellees.*