ROCCO PETRELLI *v.* THE KIMBALL TYLER CO.
ET AL.

[No. 152, October Term, 1945.]

*Decided June 13, 1946.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Maurice J. Pressman,* with whom was *Sidney M. Jacobs* on the brief, for the appellant.

*Thomas G. Andrew* and *Talbott W. Banks* for the appellees.

COLLINS, J., delivered the opinion of the Court.

Rocco Petrelli, claimant and appellant, sixteen years of age, filed a claim before the State Industrial Accident Commission for compensation which was disallowed. The case was appealed to the Superior Court of Baltimore City where it was tried before a jury which disagreed. Thereupon the appellee filed a motion for a judgment *non obstante veredicto* which was granted by the trial judge and judgment was entered for the defendants, the appellees here. From that judgment the appellant appeals.

The claimant testified in effect that he was employed as a helper on a plane machine. He went back to work about 12:30 P. M. after the lunch hour. The machine broke down about ten minutes after he returned. His superior told him and the operator of the machine to cart wood off the other plane. They brought in about two loads of wood and were then told to stop and to go out in the yard and stay there until the supply of wood was reduced. Claimant went out into the yard and sat on a barrel. A fellow employee, who proved to be Louis Taylor, who was about three or four inches taller and weighed about forty pounds more than the claimant, came up to him and wanted to borrow fifty cents. Claimant refused to let him have this and Taylor then "turned him down" and tried to shake the money out of him. The claimant then ran away. Whereupon Taylor picked up a board and threw it at the claimant who was struck on the left leg. Claimant then picked up the board and threw it back at Taylor and jumped behind a pile of wood. Taylor then picked up a bottle and threw it at claimant. The bottle struck the ground and broke and a piece of glass went through the draft opening underneath the pile of wood and severely cut the claimant's leg, as a result of which he was confined in the hospital for twenty-nine days. He said that he never knew Taylor before this incident and had never spoken to him. He knew that he worked in a different building, the char room. He further stated that on the way to the hospital the superintendent's son told him that, if he said he was fooling around, he would get

$20 a week and Taylor would not be arrested, but, if he said he was not fooling, they would arrest Taylor and claimant would not get anything. He further said that he was not fooling around with Taylor. Claimant admitted on cross-examination that he told one of his superiors while in the hospital that he had been injured while he was fooling around with Taylor. He also admitted that some friends told him that, if he was fooling around, he would not get paid and, as a result of that information, he changed his story and said he was not fooling around. On redirect examination he stated that he was not playing around with Taylor and had no conversation with him previous to the time he was asked for money. Although claimant admitted, as above set forth, that he had said that he was injured while fooling around, yet his testimony under oath was to the contrary.

A witness, Carroll Bruzdinski, testified for the employer and insurer that the claimant came to the char room, where the men smoke and loaf during lunch hour, and was fooling around with another employee in a little horse play and that pieces of wood were flying around. These two employees were throwing wood at each other, the claimant being on the outside of the char room and Taylor on the inside. The injury happened after the whistle blew to resume work. He did not see the accident.

Louis Taylor, seventeen years of age, testified for the employer and insurer that the claimant came in the char room where he was working and they started playing and talking. They began throwing wood at each other. He threw a piece of wood at claimant who threw it back at him. Claimant went out of the char room and he, Taylor, thought he had gone back in the mill. He, Taylor, had a bottle in his hand and not wanting to hurt anybody and thinking the claimant had gone, he threw the bottle at the lumber pile and it "hit right down by the corner of the pile." The claimant ran out "hollering" from behind the lumber pile after the bottle was thrown and broken. He denied saying anything to claimant about borrowing money.

In order to collect compensation it was necessary to establish to the satisfaction of the jury that the cause or origin of the accident arose "out of" and "in the course of" claimant's employment. *Hill v. Liberty Motor & Eng. Corp.*, 185 Md. 596, 45 A. 2d 467, 471. Here this Court is not called upon to render a decision as to whether the accident arose out of and in the course of the employment. It is our duty to decide whether there was legally sufficient evidence to give the jury the opportunity to determine those questions, under proper instructions, upon the facts presented and the material inferences of facts therefrom. *Todd v. Easton Furniture Mfg. Co.*, 147 Md. 352, 354, 128 A. 42; *Krell v. Maryland Drydock Co.*, 184 Md. 428, 41 A. 2d 502, 505. There was certainly sufficient evidence as to the time, place, and circumstances under which the accident occurred to support a finding that the accident arose in the course of claimant's employment. There is direct testimony that the accident occurred after the lunch hour and in the immediate vicinity of the yard where claimant was instructed by his superior to wait. *Southern Can Co. v. Sachs*, 149 Md. 562, 131 A. 760, 43 A. L. R. 417; *Boteler v. Gardner-Buick Co.*, 164 Md. 478, 165 A. 611; *Spencer v. Chesapeake Paperboard Co., et al.*, 186 Md. 522, 47 A. 2d 385.

The remaining question therefore is whether there was sufficient evidence to present to the jury the question whether the injury arose out of claimant's employment.

Appellant rightfully contends that when a demurrer prayer is offered at the close of the whole case, the established rule, frequently stated and applied by this Court, is that all of the plaintiff's evidence and that part of the defendant's evidence, if any, which tends to establish the plaintiff's contention, must be taken to be true, together with all legal inferences fairly deducible therefrom. Applying this rule to the present case, if the whole evidence adduced on behalf of the plaintiff and the legal inferences fairly deducible therefrom would entitle the plaintiff to recover, the demurrer prayer should not have been granted. *Clough & Molloy v. Shilling*, 149 Md. 189, 199,

131 A. 343; *Lashley v. Dawson,* 162 Md. 549, 554, 160 A. 738; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 426, 196 A. 111; *Highley v. Phillips,* 176 Md. 463, 468, 5 A. 2d 824.

The Court in withdrawing this case from the consideration of the jury had no power to disbelieve the testimony of the plaintiff. A jury, from the plaintiff's testimony, might have concluded that the claimant was not even a participant in the horse play. His act in picking up the board and throwing it back at Taylor might have been considered, not the act of one who willfully steps aside from his employment and engages in horse play, but as the natural reaction of anyone who has an article thrown at one and who throws it back in self-defense. Claimant's testimony bears out the theory that he was doing everything possible to get away from Taylor and avoid the horse play. The only person who knew whether Taylor intended to injure the claimant was Taylor himself, who testified emphatically that he did not know claimant was behind the lumber pile and he had no intention of injuring the claimant when he threw the bottle at the lumber pile. Taylor admits that he was engaged in horse play. There was no testimony that Taylor intended to injure the claimant. The testimony of the plaintiff, together with the testimony as to intent by Taylor, was of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom that the plaintiff did not step aside from his employment but was the innocent victim of horse play on the part of Taylor. *Miller v. Loyal Order of Moose, Lodge No. 358,* 179 Md. 530, 534, 535, 20 A. 2d 156; *Levin v. Cook,* 186 Md. 535, 47 A. 2d 505.

This Court decided in the case of *Hill v. Liberty Motor & Eng. Corp.,* 185 Md. 596, 45 A. 2d 467, that one who steps aside from his employment to initiate and participate in horse play is not entitled to recover for the consequences of his departure.

In the recent case of *Spencer v. Chesapeake Paperboard Co., supra,* it was not certain whether the accidental injury was caused by (1) electric current, (2) a lighted

cigarette, or (3) a practical joke. In discussing (3), practical joke, this Court said through Judge Delaplaine, 186 Md. at Page 528, 47 A. 2d at Page 388, "Finally, if we assume that claimant's injury was the result of a prank, it may still have arisen out of the employment. It is true that if a workman steps aside from his employment and initiates horse play, he is precluded from rocovering workmen's compensation for the consequences. *Hill v. Liberty Motor & Eng. Corp.,* 185 Md. 596, 45 A. 2d 467. But in this case the workman obviously did not provoke horse play, for he was asleep at the time."

In the very recent case of *Rice v. Revere Copper & Brass, Inc.,* 186 Md. 561, 48 A. 2d 166, where the husband of the claimant died as a result of a blow from a shovel deliberately given by a fellow employee, which grew out of a personal difference about a woman, unrelated to the work, this Court said through Judge Henderson, 186 Md. at Page 568, 48 A. 2d at Page 169, "The assault in the instant case was not due to an emotional flareup generated by friction inseparable from the working conditions, nor was the opportunity for revenge enhanced thereby. We hold that the mere relationship of co-employment, plus the fact that the blow was delivered with an implement belonging to the employer, are not sufficient to establish either a primary or contributing casual connection between the working environment and the injury. The bare fact that work brings the parties together is not enough, where the primary cause is unrelated to the work and there are no special conditions that measurably enhance the risk of injury by assault." See also *Perdue v. Brittingham,* 186 Md. 393, 47 A. 2d 491.

The last three cases cited, namely: *Hill v. Liberty Motor & Eng. Corp., supra, Spencer v. Chesapeake Paperboard Co., supra, and Rice v. Revere Copper & Brass Co., supra,* discuss so thoroughly the out-of-state decisions on horse play that we see no need to review those cases here.

In the case of *Leonbruno v. Champlain Silk Mills et al.,* 229 N. Y. 470, 128 N. E. 711, cited with approval in *Hill v. Liberty Motor & Eng. Corp., supra,* and *Rice v. Revere*

*Copper & Brass Co., Inc., supra,* the claimant while engaged in his duties in employer's factory was struck by an apple which a fellow servant, a boy, threw in sport at another. As a consequence the claimant lost part of the sight of one eye. He did not participate in the horse play and had no knowledge of it until injured. In an opinion by Judge Cardozo, the Court said, 128 N. E. at Page 711, "The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger.' *Thom v. Sinclair,* 1917 A. C. 127, 142. Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. We think with Kalisch, J., in *Hulley v. Moosbrugger,* 87 N. J. L. 103, 93 A. 79, that it was 'but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to everyone who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment. *Thom v. Sinclair, supra; Matter of Redner v. H. C. Faber & Son,* 223 N. Y. 379, 119 N. E. 842. We think the precedents in this state, whatever variance of view there may be in other jurisdictions, sustain our present ruling. This case is not within the principle of *Matter of De Filippis v. Falkenberg,* 219 N. Y. 581, 114 N. E. 1064, and *Matter of Stillwagon v. Callan Brothers,* 224 N. Y. 714, 121 N. E. 893, where the claimant, joining in the horse play, had stepped aside from the employment."

For the reasons herein given and under the authorities herein cited, this Court is of opinion that the testimony of the plaintiff, which the Court had no power to disbelieve,

together with the testimony of Taylor as to his intent in throwing the bottle, who was the only person capable of testifying to that intent, was of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom that the claimant did not step aside from his employment, but was the innocent victim of horse play in which he was not a participant, and therefore that the case should not have been withdrawn from the jury and the judgment *non obstante veredicto* should not have been granted.

> *Judgment reversed, and case remanded for further proceedings, with costs to the appellant.*