## BETHLEHEM STEEL COMPANY *v.* JONES

[No. 161, September Term, 1959.]

*Decided March 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Jesse Slingluff* and *Mathias J. DeVito,* with whom were

*Piper & Marbury* and *Kenneth C. Proctor,* on the brief, for appellant.

*Paul J. Feeley,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Bethlehem Steel Company (Bethlehem), employer and self-insurer, appeals from a judgment of the Circuit Court for Baltimore County affirming an award made by the Workmen's Compensation Commission (the Commission) in favor of the appellee, claimant and widow of Walter Scott Jones, because of the death of the latter while in the employ of Bethlehem. The case was heard by the court, sitting without a jury, on the evidence presented before the Commission. The question is the legal sufficiency of the evidence to show that the employee died as a result of an accidental injury arising out of and in the course of his employment.

The case presents no novel question of law. For the claimant to recover there must be legally sufficient evidence to show that the death was due to an accidental cause arising out of and in the course of employment, *Robertson v. North American Refractories Co.,* 169 Md. 187, 189, 181 A. 223; *Perdue v. Brittingham,* 186 Md. 393, 401-403, 47 A. 2d 491, and cases therein cited; and the burden of proof is on the claimant, *Hathcock v. Loftin,* 179 Md. 676, 679, 22 A. 2d 479; *Reeves Motor Co. v. Reeves,* 204 Md. 576, 579, 105 A. 2d 236. Slipping and falling while at work clearly constitute an accident, and injury resulting therefrom is compensable. *Townsend Grace Co. v. Ackerman,* 158 Md. 34, 148 A. 122. The decision of the Commission is prima facie correct, Code (1957), Art. 101, sec. 56 (c) ; *Stewart & Co. v. Howell,* 136 Md. 423, 110 A. 899; and if there is any evidence from which a rational conclusion to support the claim may be drawn the weight and value of that evidence must be left to the trier of the facts, and it is not the function of this Court to determine the comparative weight of conflicting evidence. *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 197, 117 A. 2d 577; *Reeves Motor Co. v. Reeves, supra.* The burden of proof may be sustained by reasonable inferences having a substan-

tial basis in circumstantial evidence where, as in this case, there are no eyewitnesses through whose testimony direct proof of an accidental injury might be furnished. *Spencer v. Chesapeake Paperboard Co.,* 186 Md. 522, 527, 47 A. 2d 385; *Krell v. Maryland Drydock Co.,* 184 Md. 428, 41 A. 2d 502; *Southern Can Co. v. Sachs,* 149 Md. 562, 131 A. 760. It is not necessary for the claimant to prove the exact cause of death. *S. Rosenbloom, Inc. v. Willingham,* 190 Md. 552, 558, 59 A. 2d 311. Proof that an accident was the proximate cause of injury or death must show that the result could have been caused by the accident and that no other efficient cause has intervened between the accident and the result; and the proof must rise above a mere guess or speculation. *Reeves Motor Co. v. Reeves, supra,* 204 Md. at 581. On the other hand, absolute certainty in expert medical testimony is not required. *Baughman Contracting Co. v. Mellott,* 216 Md. 278, 283, 139 A. 2d 852; *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 383-4, 50 A. 2d 256. Cf. *Twombley v. Fuller Brush Co.,* 221 Md. 476, 158 A. 2d 110. Whether medical opinion testimony is conclusive or not depends upon the facts of each particular case. *Paul Construction Co. v. Powell,* 200 Md. 168, 180-181, 88 A. 2d 837.

The appellant states as the Maryland Rule that "an injury is accidental only when it results from some unusual strain or exertion or some unusual condition in the employment," citing *Rieger v. Washington Suburban Sanitary Comm.,* 211 Md. 214, 216, 126 A. 2d 598, *Kelly-Springfield Tire Co. v. Daniels,* 199 Md. 156, 161, 85 A. 2d 795. Probably because in the instant case the appellant regards pneumonia as the established cause of death, it fails to refer to the circumstances under which that rule applies—that there be a sudden and unexpected rupture or failure of some portion of the internal structure of the body or the failure of some essential function of the body, even without any external happening of an accidental nature. It does not apply where injury or death results from a fall or a similar accident. See *Stancliff v. H. B. Davis Co., supra,* 208 Md. at 199. In *Jackson v. Ferree,* 173 Md. 400, 196 A. 107, and in *Kelly-Springfield Tire Co. v. Daniels,*

*supra,* both cited in *Stancliff,* it was pointed out (as the reference to these cases in *Stancliff* shows) that the claimant did not slip or fall. The same was true in the later case of *Rieger* cited by the appellant. (See 211 Md. at 215.)

There is no dispute about many of the facts in this case. The decedent had been employed by Bethlehem for about thirteen years and had a generally good work and health record. He had had one lobe of his left lung removed by surgery in 1953 following an attack of pneumonia; and he had later sustained an injury and had also had a brief illness, neither of which had any apparent bearing on this case. His job was to shovel limestone out of the bottom of hopper cars placed on a trestle over a bin or pit. To do so, he had to stand with one foot on the sloping bottom of the car and the other on a cross-bar or cross-piece between the two openings through which the limestone was to be unloaded. On the morning of his death, July 7, 1958, he left his home and reported for work in good spirits and in apparently good health. About twenty minutes after he started work that morning he was found lying on top of his shovel on a pile of stone in the bin about thirteen feet below the level of the car in which he had been working. No one saw him from the time he entered the car until he was found in the bin. There was some testimony that he was lying face down on the stones, some that his head was turned to one side. He was taken to the employer's hospital, where he was found dead on arrival. An autopsy was performed later in the day by Dr. Petty, Assistant Medical Examiner for the State.

Jones had some lacerations and abrasions of the head, the latter described generally as "brush burns"; and he was found to have some bleeding in the subarachnoid tissue, "the sort of bleeding that one not infrequently sees in cases of minor trauma or a minor fall, or something of that nature." A test for carbon monoxide in the blood was negative. Dr. Petty was of the opinion that Jones died of pneumonia. He based this opinion upon a severe degree of pneumonia which he found in the lower lobe of each lung and upon seeing no evidence of any traumatic lesion or injury of such degree as to cause death.

The evidence, we think, was sufficient to warrant an inference that Jones fell from the bottom of the hopper car and that he probably struck one or more objects in the course of his total drop of about thirteen feet. His work did not call for his going into the bin, and that he fell from the position in which he did his work is a reasonable inference. The lacerations and abrasions and the subarachnoid bleeding all indicate that he suffered some physical injuries from the fall.

Dr. Petty thought that Jones' fall might have hastened his death by a few minutes, and that he would have gone on to die as a result of his pneumonia, notwithstanding the fall, "unless, of course, he had been treated for his disease." How he could have been so treated when he was as near death as Dr. Petty's testimony would indicate, is not explained.

The two medical witnesses called by the claimant did not dispute that Jones had pneumonia. Both of them, Dr. Wright, Professor of Pathology at the University of Maryland Medical School, and Dr. Faraino, a chest surgeon, testified, however, that in normal course, a man did not suddenly drop dead from pneumonia. Dr. Petty agreed with them on this, though Dr. Petty thought that pneumonia caused Jones to collapse. Both Dr. Wright and Dr. Faraino expressed opinions to the effect that Jones died of asphyxiation. Dr. Faraino originally based this opinion largely on a ground (aspiration of Jones' own vomitus) which he pretty well abandoned in the light of a report of a microscopic examination of the contents of Jones' lungs. Another possibility which he mentioned, pneumothorax, was also quite inconsistent with the autopsy findings and seems to have been abandoned. A third possibility, which he stated, was that Jones could not breathe because of his face-down position, and died of asphyxia for that reason. Dr. Faraino admitted that he did not know the cause of death. Dr. Wright, though he could not be certain of the cause of death, was of the opinion that it was due to asphyxiation, and that death could readily have occurred in a short time with Jones' air supply cut off because of his face-down position. He mentioned a case within his own experience of a victim of an automobile accident who landed on

his face in a field and would have died if someone had not turned him over so that he could breathe.

Applying the rules which we have stated at the outset, we cannot say that the Commission, as the trier of facts in this case, whose decision is presumed to be correct, could not reasonably have found from the evidence that the decedent died as a result of asphyxiation, just as Dr. Wright thought he had. We cannot say that the appellant's medical testimony to the contrary was conclusive; and, with regard to the possibility of treatment, it is difficult to follow. Dropping dead suddenly from pneumonia appears from the testimony to be a highly improbable occurrence. Very possibly Jones was in a weakened condition due to pneumonia, and perhaps his suffocation from landing face-down on these rocks with his breath cut off, unable to turn himself over, was a result not to be expected from his fall. The unexpectedness of the result would, however, not bar recovery. *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse, supra,* 187 Md. 375, 384-5. Nor would the fact that some personal idiopathy of the decedent may have contributed to his fall prevent the fall from being an accident arising out of his employment, and so it would not bar recovery. *Watson v. Grimm,* 200 Md. 461, 466, 90 A. 2d 180; *Baltimore Towage & Lighterage Co. v. Shenton,* 175 Md. 30, 199 A. 806. The possibility of a fall from the deceased's working position in the railroad car was, we think, clearly a hazard of his employment.

In accordance with the views above stated, the judgment will be affirmed.

*Judgment affirmed, with costs.*