SCHERR, TRADING AS FREMONT VENDING CO. *v.*
MILLER

[No. 26, September Term, 1962.]

*Decided October 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and SYBERT, JJ.

*Paul Weinstein,* with whom were *Milton G. Horwitz* and *Horwitz & Horwitz* on the brief, for appellant.

*Samuel D. Hill,* with whom were *Louis Carliner, George W. White, Jr.* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

The Workmen's Compensation Commission by an order dated March 20, 1961, disallowed the claim of Edward A. Miller, Sr., appellee, for accidental injuries allegedly arising out of and in the course of his employment. On appeal by Miller to the Baltimore City Court a jury determined, on issues submitted to it, that he had sustained an accidental personal injury arising out of and in the course of his employment, and that the injury was not occasioned by a wilful intent to bring about the injury of himself or another. The bases of the employer's appeal here from the judgment entered in favor of the employee are the refusal of the trial court to direct a verdict on the ground that there was no legally sufficient evidence to justify submission of the case to the jury, and alleged error of the court in refusing to grant certain jury instructions requested by the employer.

Miller was since 1954 in the employ of the appellant, Henry Scherr, trading as Fremont Vending Company, in the latter's vending machine business. His duties included the collection and distribution of the monies deposited in the machines, located mostly in taverns in Baltimore, the repairing of the machines and the solicitation of new customers.

In addition, Scherr operates the Diamond Cab Company. Miller was also an employee of this business for approximately 26 years. For the services rendered in the two capacities, Miller was paid each week by separate checks from Diamond Cab Company and Fremont Vending Company.

On February 17, 1959, Miller, as an employee of the vending machine business, entered a tavern operated by Frank Winterling for the sole purpose of collecting money from a coin-operated pool table and making a division with Winterling. Two men seated at the bar were being served drinks by Winterling. One of them was Lawrence Bradley. Miller sat on a· stool at the bar, waiting for Winterling to give him the key to the machine.

There was sharp conflict as to subsequent events. Miller's version was that Bradley asked him, "What is your pitch with the Diamond Cab?" He ignored Bradley, since he didn't recognize him, but the latter then said, "Every time you see me you give me a hard time." When Miller still ignored him, Bradley, in a belligerent manner, addressed to him the familiar epithet aspersing his maternal ancestry, whereupon Miller replied, "Look, fellow, let's don't have that argument in here, take it outside or somewhere else." This, according to Miller, was just a figure of speech and not an invitation to go outside. Then Bradley repeated the epithet, invited Miller to come outside, and walked out himself. Miller followed him out, wearing his eyeglasses. His purpose was, he said, to explain that Bradley was mistaken as to his identity, that he was there on business and didn't want any contention in the place. He said he did not anticipate a fight, but that when he stepped to the sidewalk Bradley struck him several times and knocked him down, inflicting disabling injuries. Miller denied striking any blows. Later, Winterling gave him the key to the machine and Miller made the collection and divided with Winterling.

Bradley's testimony was that he had been to the races and had had approximately three drinks there and two at the tavern. He was part owner of a brake service company and recognized Miller as an employee of the Diamond Cab Company, with which he had done business for several years. He said his first comment to Miller in the tavern was a facetious one about the squealing brakes of the taxicabs. His subsequent testimony, corroborated by Winterling, was that after his remark Miller came over to where he was seated, began using profanity, and insisted that he come outside. As he went out the door he was struck on the back of the neck by Miller and knocked to the sidewalk. He rose, tried to push the flailing Miller away, and then wrestled him to the pavement, where he suggested to Miller that they forget about it and return to the tavern, which they did. Both men stated that they had never had any trouble before.

Miller further testified that his employer, Scherr, instructed him to handle customers in the bars where he made collections "with silk gloves", and to avoid trouble by giving a handful

of nickels to disgruntled losers on the vending machines and by buying drinks, often "for the house." He said these instructions applied to anyone in a place, not just those playing a machine. While he stated that "I never had any trouble in one of the places before", he indicated elsewhere in his testimony that on a number of occasions he had, by following Scherr's instructions, succeeded in placating angry and belligerent players who saw him taking the money out of the machines. As an example, he told of one tavern where a customer "used to lose quite a bit of money, and every time I would walk in the place he would come after me and give me a bad time. I would open up the machine and give him a handful of nickels, and on occasion I have given him two handfuls of nickels to keep him satisfied."

Miller's testimony as to his instructions from Scherr, and previous incidents in bars, was uncontradicted. It was supported, in part, by testimony from Winterling that when trouble threatened in connection with Miller's collections in his place he "eliminated it before it started" by telling the customers to "keep their mouths shut". With reference to Miller, the barkeeper observed that "Some people come in a barroom and they think they have got a right to pick on a man in his category."

One other factor to be noted is the relative size of the antagonists. Miller said he weighed 104 pounds and was five feet two inches tall. Bradley testified that his own weight was between 210 and 220 pounds. His height was not stated.

In order for a claimant to recover under the Workmen's Compensation Law (Code [1957], Art. 101, Sec. 15) for an accidental injury, he must show that it arose both "out of" and "in the course of" his employment. *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 158 A. 2d 621 (1960), and cases cited. Since the employer does not argue that Miller's injury was not "accidental", or that it was not incurred "in the course of" the employment, the basic question before us is whether there was legally sufficient evidence to warrant submission to the jury of the issue whether or not the injury was one "arising out of the employment". If there was any evidence from which the jury could deduce a rational inference that the injury arose

out of the employment, the weight and value of that evidence was properly left to the trier of the facts. *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A. 2d 577 (1955).

An injury to an employee is said to arise out of his employment "when it results from some obligation, condition or incident of the employment", *Watson v. Grimm,* 200 Md. 461, 90 A. 2d 180 (1952), and whether it does so depends upon the circumstances of each particular case, *Spencer v. Ches. Paperboard Co.,* 186 Md. 522, 47 A. 2d 385 (1946). As it was put in *Consol. Engineering Co. v. Feikin,* 188 Md. 420, 425, 52 A. 2d 913 (1947) :

> "An injury 'arises out of' employment when, after consideration of all the facts and circumstances of the case, it is apparent to the rational mind that there was a causal connection between the conditions under which the work is required to be performed and the ensuing injury. * * * The causative danger must be incidental to the nature of the business, and not independent of the relation of master and servant. If the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the situation, as a result of the exposure occasioned by the nature of the employment, it may be said to have arisen out of the employment.* * *"

If there is evidence that the work causes the act or event resulting in injury, it is immaterial "that the same event might occur from any other cause or at any other place." *Perdue v. Brittingham,* 186 Md. 393, 402, 47 A. 2d 491 (1946), and cases cited. And if the causal connection between the injury and the employment is not apparent, "then unusual or extraordinary conditions of the employment, constituting a risk peculiar to the work, may establish the causal connection between the work and the injury * * *." *id.* (at pp. 402-403 of 186 Md.).

In this case it is rather clear that the affray between Miller and Bradley was not motivated by the former's employment as a collector for Fremont Vending Company. The remarks

preceding the encounter were related to Miller's other employment with the taxicab business, yet both parties conceded that they had had no previous quarrel. Thus, with respect to the first issue submitted to the jury—whether Miller sustained injuries arising out of and in the course of his employment—the inquiry is reduced to whether there was sufficient evidence to support a rational inference that assaults by third persons were a peculiar or special risk of Miller's employment as a collector for Fremont.

Various types of work have been held to be subject to special conditions that measurably enhance the risk of injury by assault. Larson, at § 11.11(a), vol. 1, of his treatise, *Workmen's Compensation Law,* includes among such jobs those which have to do with keeping the peace or guarding property, such as policemen and watchmen; those which involve carrying money, such as collectors and cashiers; those which specially expose the employee to lawless or irresponsible members of the public, such as bartenders, or which merely subject the employee to increased and indiscriminate contact with the public, such as taxicab drivers.

The case before us is similar in some respects to the case of *Todd v. Furniture Co.,* 147 Md. 352, 128 A. 2d 42 (1925). There a night watchman, while making his rounds, was attacked and killed by an assailant, not a fellow employee, with whom he had had a previous quarrel over a dog. On appeal by the employer from an award of compensation to the widow, the lower court directed a verdict for the employer. This Court reversed on the ground that while the evidence was uncontradicted that the antecedent quarrel, unrelated to the work, was the proximate cause of the injury, the inference could also be drawn that the watchman was peculiarly exposed to this kind of injury because of the nature of his duties, and that this exposure was a contributing cause. It was held that the jury should have been given the opportunity to determine, upon the evidence presented, whether or not the injury suffered by the employee arose out of and in the course of his employment.

We think the *Todd* case requires the conclusion that in the case at hand it was necessary to submit to the jury, under

proper instructions, the question whether or not the claimant's injuries arose out of his employment. It would be possible for a jury to draw either of two incompatible inferences from the conflicting evidence. On the one hand, it could (as the jury below apparently did) determine that Miller's employment subjected him to special risk of assault by more or less intoxicated bar patrons or irate vending machine players, that his working environment was either a primary or contributing cause of his injury, and that he was simply carrying out his employer's orders when, as he said, he went outside to reason with Bradley. On the other hand, it could infer that the employment entailed no special or peculiar conditions that measurably increased the risk of injury by assault, or that in any event Miller stepped aside from his employment (as in *Hill v. Liberty Motors,* 185 Md. 596, 45 A. 2d 467 (1946)) and initiated an assault upon Bradley, and in consequence suffered injury "occasioned by the wilful intention of the injured employee to bring about the injury * * * of himself or another", which, under Code (1957), Art. 101, Sec. 15, would bar recovery.[1] Beyond question, then, these are factual matters which a jury must decide, under proper instructions, and "the trial judge has no right to control the exercise of the jury's function to weigh the credibility of the evidence." *Consol. Engineering Co. v. Feikin, supra; Todd v. Furniture Co., supra.*

Appellant maintains that the trial court's instructions to the jury were inadequate and prejudicial in two particulars. At the conclusion of all of the testimony, appellant submitted seven requests for instructions. The learned trial judge stated that he was disposed to adopt virtually all the principles embodied in the requested instructions, but for the record refused all of them. Employer's fourth prayer was as follows:

> "In order for the claimant to recover, it is necessary that he prove that there was a causal connection

---

1. The second issue submitted to the jury the question whether the claimant's injury was occasioned by his wilful intention to injure himself or another, to which the jury answered "No".

between his employment and the injury. *The mere fact that the work caused his association or meeting with the other man involved in the incident is not sufficient."* (Emphasis supplied.)

In the instructions given to the jury the italicized portion of the proposition requested in the above prayer was omitted. In factual situations comparable to those in the instant case this Court has used the omitted language. See *Hill v. Liberty Motors, supra; Petrelli v. The Kimball Tyler Co.,* 186 Md. *Inc.,* 186 Md. 561, 48 A. 2d 166 (1946). In the absence of 604, 48 A. 2d 169 (1946); *Rice v. Revere Copper & Brass,* the instruction as requested, the jury could very well have concluded that the claimant's entry into the tavern to perform work for his employer was sufficient, in and of itself, to bring his subsequent injury within the provisions of the Workmen's Compensation Act. Therefore we conclude that the failure to give the specific instruction requested amounted to prejudicial error.

The appellant's remaining complaint is the court's failure to instruct the jury, as requested in his sixth prayer, that "* * * if it finds from a fair preponderance of the evidence that the claimant had stepped aside from his employment to initiate and/or participate in the alleged assault, then the said claimant is not entitled to recover and the verdict of the Jury should be in favor of the employer."

Perusal of the instructions as given reveals that the lower court charged the jury on the second issue submitted, dealing with the presence *vel non* of a wilful intention on the part of the claimant to bring about the injury of himself or another, but that it omitted the element of "initiation" or "participation" in the assault causing the injury. We are unable to find that the instructions as a whole adequately advised the jury that an employee who "steps aside from his employment" to initiate or participate in an assault "is not entitled to compensation for the consequences of his departure", because such injuries do not arise out of his employment. *Hill v. Liberty Motors, supra* (at p. 613 of 185 Md.).

In view of the prejudicial errors in the instructions as given, we must reverse.

*Judgment reversed and case remanded for a new trial; costs of this appeal to be paid by appellee.*