## BALTIMORE TRANSIT COMPANY *v.* TRUITT

[No. 49, September Term, 1960.]

*Decided November 11, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Patrick A. O'Doherty* and *George P. Bowie,* for appellant.

*Jacob Matz* and *Henry J. Frankel,* with whom was *Irvin
S. Friedman* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the plaintiff-appellee in a personal injury case arising out of an accident in which the plaintiff's stalled automobile was struck in the rear by a streetcar. The jury's finding of negligence is not challenged on appeal. The main contention is that there was no legally sufficient evidence to establish a causal connection between the automobile accident, which occurred on September 4, 1957, and disc surgery upon the plaintiff's back on August 16, 1958. At that time the plaintiff was forty-four years old.

The plaintiff testified that when her automobile was struck she was "jostled about violently and my face struck the steering wheel, then a pain hit me in the back of my head and went clear down the entire length of my body * * *." She stepped out of her car, fainted and was taken to Franklin Square Hospital. Although her physical examination was negative, she told the examining doctor she was nervous and nauseated, and complained of a numb, aching feeling in her back. No x-rays were taken, and she went home. A week later she returned to work at the Chesapeake Restaurant, where she was employed as a waitress. But she testified that she had discomfort in her back, which she had never had prior to the automobile accident, and difficulty in performing her duties. This was corroborated by the testimony of a co-worker, who testified she "was having trouble getting down." On December 4, 1957, she went to see her family physician, Dr. Shochat. He testified she told him about the automobile accident, but his only positive finding was that she had swollen glands, which subsequently cleared up. He sent her to Dr. Roman for x-rays of the cervical spine, which proved to be negative.

On January 2, 1958, the plaintiff reported for work and went into the kitchen. When she was in the act of taking a tray from a shelf, she felt a severe pain in her lower back. She rested a few minutes but on attempting to resume her duties had a second seizure which rendered her unconscious. She was taken to the Maryland General Hospital in an ambulance and remained there fourteen days, twelve of which were in traction. Dr. Mitchell diagnosed her case as low back

strain, with possibility of an underlying disc at fifth lumbar vertebra. She was also examined by Dr. Mosberg. She told him she had no pain in her lower back prior to January 2nd. After discharge, she returned to part-time work, wearing a back brace, but complained of numbness and pain. On May 22, 1958, Dr. Shochat referred her to Dr. Thompson, a neurosurgeon, for consultation, and he examined her on June 3, 1958. X-ray pictures were taken by Dr. Roman. On August 7, 1958, she entered Lutheran Hospital, where on August 16, 1958, she was operated on by Dr. Thompson. The final diagnosis shown on the hospital records was "degenerated disc L5-S-1 and herniated disc L4-L5."

Dr. Thompson had been summoned to testify on behalf of the plaintiff at the trial, but it was learned that the witness was not available because he was operating. The plaintiff then proposed to offer the pre-trial deposition of Dr. Thompson taken by the appellant, in lieu of his "live" testimony. In a conference between the court and counsel it was agreed that counsel for the appellee might read the deposition to the jury, with one exception. That exception related to Dr. Thompson's answer to a hypothetical question propounded by counsel for the appellant, in which the witness stated: "* * * in summary, I would feel that if Mrs. Truitt sustained an injury to her back, which is well documented, and complained of low back symptoms prior to the episode on January 2nd, when she stooped over and felt a severe pain in the back and radiation down the left leg, then it would be a causal connection. If, however, the patient had no symptoms relating to the low back following her accident and had no low back symptom until she stooped over on January 2nd to pick up the tray, (I would be surprised, but) I would have to conclude that the patient's injury on September 4th had no causal connection with her low back derangement." Counsel agreed that the words in parentheses should be omitted. Yet when counsel for the appellee was reading the deposition, there were repeated objections by counsel for the appellant.

The appellant contends that the trial court abused its discretion in failing to require Dr. Thompson to testify in person

when a dispute arose between counsel as to the scope of the agreement regarding the use of Dr. Thompson's deposition. We find no abuse of discretion. The trial court stated that his recollection was clear that "we discussed this particular answer here at the Bench, and my understanding was that it was agreed that it was to be read to the jury from the deposition." The purport and effect of the oral agreement, made in the presence of the trial court, would seem to be a matter for the trial court to pass upon. We could hardly find that it was an abuse of discretion to place an interpretation upon the language employed in the context, contrary to that of counsel for the appellant, or to hold counsel to a bargain whereby opposing counsel dispensed with the calling of the witness in person and agreed to the deletion of a portion of his testimony deemed harmful to the appellant's case. It is not without significance that counsel for the appellant never asked that Dr. Thompson be called in person. We do not think that any of the answers were not responsive to the questions put.

In each case, the objections were aimed at eliminating references by the witness to the patient's history prior to June 3, 1958, from whatever source derived, and thus to destroy the basis for the witness' conclusion that there was in fact a causal connection between the condition diagnosed in June and verified by the operation in August, and the automobile accident in September of the previous year. Based on the history she gave him, Dr. Thompson expressed the opinion that she was thrown forward at the moment of impact and sustained a wrenching injury to the neck, to the mid-dorsal region of her back and to the lower lumbar region of the back. After the severe discomfort from the sprains of the neck and mid-back disappeared, the patient continued to complain of low-grade discomfort in the low back region. It was his theory that the accident produced tears in the supporting ligaments of the lumbar disc, the annulus fibrosis, which remained present until January 2nd, when she bent forward and protruded the nucleus pulposus through the tear, producing a severe leg pain for the first time. The pain was relieved by traction, but the symptoms persisted until relieved by surgery.

The appellant concedes that Dr. Thompson, as an attend-

ing physician, was entitled to rely upon statements, pathologically germane, given to him by the patient. Cf. *Langenfelder v. Thompson,* 179 Md. 502, 508, *Charlton Bros. Transp. Co. v. Garrettson,* 188 Md. 85, 93, 94, and *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 58. See also *Adams v. Benson,* 208 Md. 261, 266, and *Twombley v. Fuller Brush Co.,* 221 Md. 476, 487. But the contention seems to be that the history on which the witness relied was so far contradicted by the plaintiff's testimony on the stand and in her pre-trial deposition, and by the absence of supporting evidence in the testimony of other witnesses, or in the hospital records, as to be incredible and unworthy of belief. We find no merit in the contention. The plaintiff definitely testified on the stand that after the accident, in which she experienced a sharp pain in her back, she had a dull aching pain, which grew worse when she returned to work. She had never had such a pain before. That she had discomfort in her back was confirmed by the testimony of a co-worker. It is quite true that the plaintiff did not complain of acute pain in the lower back when she was taken to the Franklin Square Hospital after the accident, as Dr. Thompson recognized. It is also true that she told Dr. Mosberg she had had no back pain prior to January 2, 1958. But there is an entry in the Maryland General Hospital records that she "had an accident while riding a Baltimore Transit bus last September. Alleges she hurt her back, but then she was able to walk and has been working as a waitress since then." The records of the Lutheran Hospital contain an entry that patient "had car accident in 9/2/57. From this time has back pains * * *." Viewing the evidence in a light most favorable to the plaintiff, we cannot find on the record that the inference of causal connection drawn by Dr. Thompson was wholly unsupported. It should hardly be necessary to observe that the weight of the evidence was for the jury to consider.

The appellant raises other points that may be dealt with briefly. Over objection, Dr. Shochat, as an attending physician, was allowed to express an opinion that the automobile accident was the cause of the patient's disability. But on cross examination he admitted that he based his opinion upon the opinions of Dr. Thompson and Dr. Roman. Counsel for the

appellant did not then move to strike his opinion, but did so in two "medical prayers" submitted at the close of the case. The trial court did not grant the prayers as offered, but told the jury to disregard the opinion. We think this was sufficient. We think the objection to Dr. Roman's testimony, as to the x-rays he took, is captious. Dr. Roman was called largely upon the insistence of counsel for the apppellant. Even if we assume that his testimony was irrelevant, it was clearly not harmful and the court's refusal to strike it at the close of the case could not amount to prejudicial and reversible error. The final point, as to inclusion in the court's charge of a reference to loss of future wage earning capacity, is without merit. There was testimony that the injury to the plaintiff was permanent, and also that she had difficulty in performing her work. Cf. *Adams v. Benson, supra* at pp. 271, 273.

*Judgment affirmed, with costs.*