524 A.2d 1245

**KING WATERPROOFING COMPANY, et al.**

v.

**Kenneth C. SLOVSKY.**

**No. 1171 Sept. Term, 1986.**

Court of Special Appeals of Maryland.

May 7, 1987.

W. Stanwood Whiting, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Richard Teitel, Asst. Atty. Gen., on the brief) Baltimore, for appellants.

Suzanne L. Posner (Ronald M. Sharrow, chartered on the brief) Baltimore, for appellee.

Argued before BISHOP, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

Kenneth C. Slovsky, the appellee, was awarded workers' compensation under the provisions of Md.Code (1985 Repl. Vol.), Article 101,[1] for disability resulting from injuries sustained when he was struck by an automobile while crossing a public highway during a mid-shift break in his employment. We are now asked to consider a question that both the Workmen's Compensation Commission (The Commission) and the Circuit Court for Baltimore County an-

---

1. All further statutory references will be to this Article of the Code.

swered in the affirmative: whether the claimant's disability resulted from an accidental injury "arising out of and in the course of his employment."

At the time of his injury, the claimant was employed on a part-time basis as a telephone solicitor for appellant King Waterproofing Company (King). He worked a four hour shift from 4:00 to 8:00 in the evening, which included a paid break. On December 19, 1984, the claimant took his break at approximately 6:30 p.m. and left King's offices on Ellen Road near Liberty Road in Baltimore County. An automobile struck the claimant shortly thereafter while he was attempting to cross Liberty Road.

At the hearing before the Commission, the parties agreed that the claimant's work shift included a paid break of 10 to 15 minutes in duration. On the evening he was injured, he left his work place during his break to go to a carry-out restaurant, located across Liberty Road from his employer's premises, where he planned to purchase some food and drink for himself. Although the claimant could not remember whether he had been asked on that particular occasion to pick up food or drink for any of his co-workers, it was agreed that he had picked up refreshments for his fellow employees in the past. Among those for whom he had performed this service was his supervisor. The claimant conceded that he was not required to go out for refreshments as part of his job; rather, he would do so as a favor to his co-workers, who would reciprocate by sometimes bringing back refreshments for him. In addition, he testified that there was a sink with running water on the premises in King's offices, but no water fountain or soda machine.

The Commission found that the claimant had sustained an accidental injury arising out of and in the course of his employment on December 19, 1984, and ordered King and its insurer to pay compensation in accordance with that finding. Feeling aggrieved by the Commission's decision, King and its insurer noted an appeal to the Circuit Court for Baltimore County pursuant to § 56. Prior to the sched-

uled trial date, the claimant filed a motion for summary judgment. Citing the record of the Commission proceedings, the claimant asserted that there was no genuine dispute as to any material fact and that the Commission was correct as a matter of law in finding that he sustained an accidental injury arising out of and in the course of his employment. At the hearing on that motion the employer and its insurer answered the motion for summary judgment orally and moved for summary judgment in their own behalf. Agreeing that there was no genuine dispute as to any material fact, counsel for the employer and its insurer proffered the following additional facts, to which Daniel Bendler, a supervisor for King, would have testified:

> He would testify that there was—first of all, there are rest rooms on the facilities, that there was a twenty minute paid meal break, that that was a break which was taken by all the employees at the same time. There was running water and styrofoam cups on the premises. In addition, there was a coffee machine on the premises. There was free hot water available on the premises, hot water maker. In addition to that, there were instant package soups and things of that nature available at no cost for the employees to use on the premises during their breaks.
>
> . . . . .
>
> There is a refrigerator, small refrigerator, on the premises for which an employee can keep food and beverage. There are tables available on the premises for an employee to partake of food and drink, . . . .

Responding to this proffer of additional facts, the claimant's counsel conceded that there was a coffee machine on the premises but stated that her client did not drink coffee. She further indicated that instant soup mixes were only sometimes available and that her client was unaware of a refrigerator in the office.

Based on the "virtually agreed statement of facts" presented to the court, the hearing judge ruled that the claimant's injury did arise out of and in the course of his

employment. Accordingly, the court entered summary judgment in favor of the claimant, thereby affirming the Commission's award of compensation.

In reviewing the circuit court's grant of summary judgment, we must decide whether there is a genuine dispute as to any material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496, 520 A.2d 717 (1987). The appellants do not argue that there are material facts in dispute, and, indeed, the only facts about which there was any disagreement in the circuit court (whether instant soup mixes were available on the employer's premises, whether the appellee was aware of a refrigerator available for employees' use on those premises) are not facts "the resolution of which will somehow affect the outcome of the case." [2] *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). Accordingly, we proceed to consider whether the appellee was entitled to judgment as a matter of law on the facts presented to the circuit court.

The compensability of appellee's disability depends on whether it resulted from an accidental injury "arising out of and in the course of" his employment.[3] The words "out of" refer to the cause or origin of the accident, while the phrase "in the course of" relates to the time, place and circumstances under which it occurred. *Wiley Mfg. Co. v.*

---

**2.** There was also a discrepancy in the record as to the duration of the appellee's paid break. The appellants' counsel proffered in circuit court that the break was 20 minutes, whereas the parties agreed at the Commission hearing that the break was 10 to 15 minutes. Although material, we do not regard the duration of the break as a disputed fact since the appellee does not challenge the fact that the break was 20 minutes.

**3.** The appellee suggests that his injury may fall within § 67(6), under which an injury "caused by the wilful or negligent act of a third person directed against an employee" need only occur in the course of employment (and not arise out of it) to be compensable. *Giant Food, Inc. v. Gooch*, 245 Md. 160, 225 A.2d 431 (1967). There is nothing in the record, however, to indicate that the driver of the vehicle that struck the appellee acted either wilfully or negligently.

*Wilson,* 280 Md. 200, 205, 373 A.2d 613 (1977); *Mack Trucks, Inc. v. Miller,* 23 Md.App. 271, 272, 326 A.2d 186 (1974), *aff'd,* 275 Md. 192, 338 A.2d 71 (1975). An injury is said to arise out of employment when it results from some obligation, condition or incident of employment. *Scherr v. Miller,* 229 Md. 538, 543, 184 A.2d 916 (1962); *Pappas v. Modern Mfg. Co.,* 14 Md.App. 529, 532, 287 A.2d 798, *cert. denied,* 265 Md. 741 (1972). An injury arises in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be in the performance of his or her duties and while he or she is carrying out those duties or something incident thereto. *Dep't of Correction v. Harris,* 232 Md. 180, 184, 192 A.2d 479 (1963); *Pappas, supra,* 14 Md.App. at 532, 287 A.2d 798. The determination as to whether an injury arises out of and in the course of employment depends on the facts and circumstances of each particular case.[4]

 Ordinarily, injuries sustained by an employee while "going or coming" from his or her place of employment are not compensable under the Workmen's Compensation Act because they do not arise out of and in the course of employment. *Wiley Mfg. Co. v. Wilson, supra,* 280 Md. at 206, 373 A.2d 613; *Miller v. Johns Hopkins Hospital,* 57 Md.App. 135, 138, 469 A.2d 466, *cert. denied,* 299 Md. 656, 474 A.2d 1345 (1984). Two exceptions to this general rule are the "premises rule" and the "proximity rule." The former "applies when an employee is injured on the premises of the employer and while going to or from his or her job." *Miller, supra,* 57 Md.App. at 138, 469 A.2d 466. The latter, which is essentially a geographical extension of the

---

4. Although the requirements that an injury arise "out of" and "in the course of" employment have been regarded as separate requirements, the distinction should not be overemphasized. As stated in 1A A. Larson, *Workmen's Compensation Law* § 29.00 (1985):

In practice, the "course of employment" and "arising out of employment" tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other.

area of the former, *id.*, applies when the injury occurs at a point located off the employer's premises where a special hazard "peculiarly associated with the employment" exists. *Wiley Mfg. Co., supra,* 280 Md. at 208, 373 A.2d 613.

The "going and coming" rule and the two exceptions discussed apply to the employee's trips to and from work at the beginning and end of the work day. In addition,

> when the employee has a definite place and time of work, and the time of work does not include the lunch hour, the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day, and should be governed by the same rules and exceptions.

1 A. Larson, *Workmen's Compensation Law* § 15.51, at 4–116.15 (1985). The instant case does not involve a lunch (or dinner) break, but, rather, a break of shorter duration, more in the nature of a coffee break. We believe the off-premises accident that occurred during the break in this case presents a situation to which the "going and coming" rule and its exceptions do not apply. The better analysis, in our view, is to consider whether the appellee sustained his accidental injury while engaged in some personal comfort activity incidental to his employment.

The Court of Appeals in *Sica v. Retail Credit Co.,* 245 Md. 606, 612, 227 A.2d 33 (1967), stated, albeit *dicta,* that "[t]he modern institution of the 'coffee break' benefits the employer, in maintaining the employees' morale, as well as the participating employees." The Court further observed that there could be little question but that an accident sustained during a coffee break on the employer's premises arises out of the employment. *Id.* at 612–13, 227 A.2d 33. Relying on this *dicta,* we held in *Mack Trucks, Inc. v. Miller, supra,* that an employee who was injured during a coffee break while playing touch football on his employer's premises was entitled to workers' compensation.

If an injury that occurs during an on-premises coffee break can arise out of employment, in the sense that it

results from an incident of the employment, it follows that an injury sustained during an off-premises coffee break also can arise out of employment. There would appear to be a greater likelihood, however, that an employee who leaves his employer's premises during a coffee break or rest break may depart from the course of his employment. In regard to the compensability of injuries sustained during off-premises coffee breaks, Professor Larson writes:

> It is clear that one cannot announce an all-purpose "coffee break rule," since there are too many variables that could affect the result. The duration might be five minutes, seven minutes, 10 minutes, or even 20 minutes by which time it is not far from that of a half-hour lunch period. Other variables may involve the question whether the interval is a right fixed by the employment contract, whether it is a paid interval, whether there are restrictions on where the employee can go during the break, and whether the employee's activity during this period constituted a substantial personal deviation.

1 A. Larson, *supra,* § 15.54, at 4–116.38 to .40 (footnotes omitted).

■ Turning to the facts in the instant case, the appellee and his fellow telephone solicitors received a paid 20–minute break under the terms of their employment. The break was intended to benefit both King, the employer, and its employees inasmuch as the opportunity to take a brief respite would ostensibly renew the employees' vigor and, of particular importance in the case of telephone solicitors, their voices. Employees generally used the break to attend to their personal comfort, which included the consumption of food and drink. The employer accepted and encouraged this activity by providing on the premises a coffee machine, a refrigerator, and tables for employees to partake of refreshments. Within the confines of the employer's premises, then, the employees were entitled to a break as an incident of their employment. The only question is whether the appellee somehow departed from the course of his

employment by leaving King's premises during his break on December 19, 1984.

We conclude that the appellee did not leave the course of his employment. At issue is whether the appellee's accidental injury occurred at a place where the appellee reasonably could have been in attending to his personal comfort during his paid break. Under the circumstances of this case, we think it was reasonable for the appellee, at the time of his accidental injury, to be going to a carry-out restaurant across the street from his employer's premises. The appellants did not contend that the employer prohibited employees from leaving the premises during their breaks. Moreover, the appellants conceded that the appellee and King's other employees customarily went out to obtain food and drink during those breaks. Even the appellee's supervisor had asked the appellee on prior occasions to pick up refreshments. Thus, it is apparent that the employer, while perhaps not encouraging its employees to leave the premises, at least acquiesced in the practice.

We do not find the circumstances of the instant case to be significantly distinguishable from those in *Maryland Casualty Co. v. Insurance Co. of North America*, 248 Md. 704, 238 A.2d 88 (1968). There, the Court of Appeals held that an injury sustained by an employee of a racing stable occurred in the course of employment where the employee was injured while en route by automobile to a restaurant near the race track to have coffee. The employee in *Maryland Casualty* was on call around the clock and was paid on that basis. Although there was a cafeteria located at the race track, the record indicated that it was located at such a distance from the employee's work area that a car was considered necessary to get there and return in a reasonable time. The Court relied on these facts, "coupled with the knowledge of the employer that his employees frequently left the track for coffee and meals and that they did so with his approval," in concluding that the injured employee was "within the course of his employment" at the time of his injury. 248 Md. at 708, 238 A.2d 88. In the case

*sub judice,* as in *Maryland Casualty,* the employee left his employer's premises, with the employer's tacit consent, to obtain refreshments that were unavailable on the premises. The fact that the employee in *Maryland Casualty* was "on call," and therefore arguably within his employer's control, is of no practical significance since that employee probably could not have returned to his place of employment, when summoned, in less than 20 minutes, the established duration of the break in the instant case.

The appellants argue that it was unnecessary for the appellee to leave the employer's premises to obtain refreshments because the employer provided such items as coffee and instant soup mixes on the premises. The fact that the employer may have provided certain refreshments, however, does not support an inference that employees were not permitted to leave the premises, given the employer's acquiescence in that practice. Moreover, the limited fare available on the premises did not satisfy those who, like the appellee, preferred a cold drink. Under all the circumstances, the appellee, at the time he was injured, was reasonably engaged in ministering to his personal comfort, and his conduct did not constitute a departure from the course of his employment.

Courts in other jurisdictions that have considered this question in similar factual settings have reached the same conclusion that we reach here. *See generally* 1 A. Larson, *supra,* § 15.54, and cases there cited. Particularly analogous to the instant case is *Prater v. Indiana Briquetting Corp.,* 253 Ind. 83, 251 N.E.2d 810 (Ind.1969), in which the Indiana Supreme Court held that an employee who was struck by a train while proceeding from his employer's premises to a nearby business establishment during an informal work break was killed in the course of his employment. The employee had been on his way to purchase soft drinks for himself and another employee at the time of the accident. In reaching its conclusion that the deceased employee was in the course of his employment, the Indiana court reasoned that the procuring of soft drinks during a

break period was a normal incident of employment and that the conditions and circumstances under which the decedent worked were such as to make the purchase of soft drinks at the nearby business establishment reasonable. 251 N.E.2d at 813. The court further noted that the employer in that case had never objected to the practice, which had been customary among its employees, and that its silence in this regard, coupled with its failure to install a soda machine on its premises and the fact that a plant manager previously had sent employees to the business establishment led "to the inescapable conclusion that [the employer] acquiesced in the practice." *Id.*

In summary, we hold that the appellee, under the facts and circumstances of this case, did sustain an accidental injury arising out of and in the course of his employment. We caution, however, that we do not state here a general rule for injuries sustained during off-premises coffee breaks. As with all cases of accidental injury under § 15, the determination as to whether injuries sustained during off-premises coffee breaks arise "out of" and "in the course of" employment must be made on a case-by-case basis.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANTS.