608 A.2d 1264

CAM CONSTRUCTION COMPANY, INC. et al.,

v.

Vincent J. BECCIO.

No. 1459, Sept. Term, 1991.

Court of Special Appeals of Maryland.

July 6, 1992.

Amy B. Goldfarb (Wiley, Engel & Packard, on the brief), Baltimore, for appellants.

Janet D. Bacot (Arnold, Bacot, Gay & Tingle, P.A., on the brief), Baltimore, for appellee.

Argued before GARRITY, CATHELL and MOTZ, JJ.

MOTZ, Judge.

This case presents the question of whether an employee's use of a prescription drug may be considered in the evaluation of whether his on-the-job injury arose "out of and in the course of" his employment for the purposes of workers' compensation. Because the use and effect of prescription drugs is relevant to the consideration of an employee's eligibility for workers' compensation, and since this evidence was excluded at trial, we reverse the judgment of the Circuit Court for Baltimore City.

(i)

In May 1987, appellee, Vincent J. Beccio ("Beccio") was employed by appellant, CAM Construction, Inc. ("CAM"), as a superintendent for a construction project informally known as the "Baltimore City Jail project." On June 17, 1987, at around 7:15 a.m., Beccio tripped and fell while walking down a dark corridor in the building under construction. Because he was carrying blueprints, a tape measure, and other tools, Beccio was unable to break his fall; he hit his head on a wall and lost consciousness for about 10 minutes. After he was discovered by another

employee, he was taken by ambulance to the University of Maryland Hospital.

While at the hospital, Beccio reported that earlier that morning he had taken one pill known as Dantrium, a muscle relaxant. The hospital report included the following information as recounted by Beccio to the physician on duty:

> Tenderness in his legs with toe walking over the past two months. Claims he was given Dantrium by his physician and took his first pill this a.m. Thirty minutes later he became unbalanced, and fell forward striking his face and losing consciousness for several minutes. Claims he couldn't move all his limbs for "five minutes" and then noticed his [left] side was weak ... No prior similar episodes.

The Dantrium had been prescribed in 1987 to treat Beccio's life-long "toe-walking" disorder, a condition which caused him to walk on his toes and lean forward. Among the side effects of Dantrium are drowsiness, dizziness, weakness, general malaise, fatigue and diarrhea.[1] The toe-walking condition affected Beccio's stride to varying degrees and usually for only short periods of time. When he was not actually "toe-walking," Beccio stepped with a "slight limp" or an "awkward gait", which was attributable at least in part to two operations on his hip in 1970 and 1976.

Beccio filed a claim with the Workers' Compensation Commission ("the Commission") on September 10, 1987, alleging that he had sustained an accidental injury arising out of and in the course of his employment. The claim was heard before the Commission on contested issues filed by CAM and by Travelers Indemnity Company (collectively, "the employer"). On March 16, 1988, the Commission ruled that Beccio had sustained an accidental injury arising out of and in the course of his employment on June 17, 1987.

---

1. Medical Economics Data, *Physician's Desk Reference,* at 1619–20 (1992).

The employer filed a motion for rehearing, asserting that (1) "several medical reports regarding the initial examination of Mr. Beccio were not admitted by either counsel"; (2) Beccio's counsel "had argued that medical testimony was necessary to indicate the effect of the Dantrium upon his client and [the] attached medical reports do so"; and (3) the Commission's prior holding was "against the weight of the evidence presented in the hearing." The motion was granted, and on July 8, 1988, after rehearing, the Commission rescinded its prior order and ruled that Beccio did not sustain an accidental injury arising out of and in the course of his employment. Beccio appealed this decision to the Circuit Court for Baltimore City.

On January 14, 1991, Beccio filed a motion for summary judgment, arguing *inter alia*, that Dantrium was administered and taken in accordance with a physician's prescription and Beccio's injury did not occur solely from his idiopathic condition.[2] Beccio asserted that Md.Ann.Code art. 101, § 45 (1985), which excluded coverage for persons who are injured solely as a result of intoxication or the effect of a narcotic, depressant, stimulant, hallucinogenic, or other drug, did not preclude coverage for him, because it specifically excepts from this exclusion drugs which have been "administered or taken in accordance with a physician's prescription." On February 20, 1991, the circuit court entered partial summary judgment in favor of Beccio and issued a brief, handwritten explanation for this decision, which stated:

> Claimant's motion [for] summary judgment is granted in part only on the limited issue of § 45. [Section] 45 means that if the *sole* cause of injury is prescription drug the

---

2. The term "idiopathic condition" refers to certain risks or conditions which are "personal to the claimant" and do not themselves arise out of employment, unless the employment contributes to the risk or aggravates the injury. A. Larson, *The Law of Workmen's Compensation* § 12.00 (1990).

injury is compensable. *Liberal* construction to the claimant by statute.

(emphasis in original.)

In response to this ruling, the employer filed a motion for reconsideration, which was heard on May 31, 1991, the first day of the trial. A different trial judge denied the motion for reconsideration. Prior to the trial, Beccio also submitted a motion in limine seeking to redact any reference to the drug Dantrium in the medical records submitted as evidence at trial as well as to prohibit testimony at trial regarding the drug. The trial court granted the motion, "as it relates to any defense [by the employer] on the issue of the drug Dantrium being a substantial factor as to the cause of the accident." The court withheld ruling on "any other references to the drug as it may apply to impeachment or credibility of [Beccio]" during direct or cross examination.

The case proceeded to trial. Beccio testified that, on the day of the accident, his walking was "perfectly normal," which, for him, was with his regular limp. His fall, he explained, was caused by his tripping over debris that he could not see due to the darkness of the hallway in which he was walking. His injury was exacerbated, he said, by his inability to catch his fall, due to the tools of his trade which he carried in his hands and arms.

In addition to Beccio's testimony, the jury heard the testimony of Charles Hartman, a carpenter who worked at the construction site where Beccio was injured and who discovered Beccio lying on the floor after his fall. Hartman, who no longer worked for CAM but who had not been fired by the company and who had no friendship with Beccio or anything to be gained by testifying for him, testified that Beccio "was moaning and calling my name." Hartman found Beccio "kind of laid back against the wall and there was blueprints all over the floor and I notice[d] blood coming off his head." Hartman described the setting of the hall where Beccio fell, explaining that "there was very little light coming from the office door, and there was

one light just about at the end of the corridor ... It was like walking from outside in the sunlight into a very dim room." In addition, he said that there was "not quite enough light to see where you were going." Hartman further testified that "there was some busted up concrete, some debris on the floor" of the hallway. Lastly, Hartman testified that, on the morning of the accident, Beccio was walking with his normal "limp."

The defense presented two witnesses. First, Melvin Lapp, another superintendent employed by CAM for the Baltimore City Jail project, who was a long-time CAM employee, testified that, while he was not present at the construction site on the day of Beccio's accident, he was very familiar with the project. The hallway where Beccio fell, Lapp said, was "well lit" and, to his knowledge, no one had ever complained about the lighting. Second, James McGarrity, Vice President of CAM, testified that, when he interviewed Beccio in May 1987 for the superintendent's position, he asked Beccio whether his walking condition "would in any way hinder his position as a job site superintendent." Beccio "indicated that it wouldn't ... I also did not think that it would," McGarrity said. McGarrity further testified that, while he was not at the construction site on the day of Beccio's accident, he was familiar with the project. According to McGarrity, "the lighting was sufficient to travel through the corridor" in which Beccio fell; numerous workers passed through the hallway during construction without any problem, he said.

During the trial, there was no mention of Beccio's use of the drug Dantrium. There was, however, reference to his walking condition; for example, Beccio admitted that he sometimes used a cane for a problem with his hip, and that, on a few previous occasions due to his "toe-walking" condition, his legs had "buckled," causing him to fall. The jury was properly instructed that "an injury to be compensable must not only be sustained in the course of employment but must also arise out of employment." It was further cor-

rectly instructed as to the meaning of these terms.[3] Charged to respond to the question of whether Beccio's injury arose "out of and in the course of his employment," the jury returned in less than 15 minutes with a verdict in Beccio's favor, *i.e.*, that the injury did arise out of, and in the course of, his employment. The employer now appeals, asserting that the circuit court erred in: (1) its initial holding that if the sole cause of injury was a prescription drug, "the injury is compensable," and in (2) its subsequent refusal to permit the jury to hear evidence of Beccio's use of Dantrium.

### (ii)

We are asked here to address the combined effect of two statutes having to do with an employee's eligibility for workers' compensation. First, Md.Ann.Code art. 101, § 15, in effect on the date of Beccio's accident, states in pertinent part:

Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, *except* where the injury is occasioned by willful intention of the injured employee to bring about the injury or death of himself or of another, or *where the injury results solely from* the intoxication of the injured employee while on duty or solely from *the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug* or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job *except when such drug has been administered or taken in accordance with a physician's prescription.* Where the injury ... results

---

**3.** No exception was taken to any jury instruction; nor are the instructions in any way objected to on appeal.

solely from intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job, neither the injured employee nor any dependent of such employee shall receive compensation under this article. (emphasis added).[4]

 This central provision of the workers' compensation law imposes liability upon an employer only where

---

**4.** Since the inception of this case, the General Assembly has repealed and recodified those articles within the Annotated Code of Maryland addressing labor and employment issues. Those statutes were reviewed and recompiled into Md. Labor and Employment Code Ann. (1991). *See* 1991 Md.Laws Ch. 8. A substantial portion of the former § 15 was recodified at Md. Labor and Employment Code Ann. § 9–501, which states:

(a) *In general.*—Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:

(1) the covered employee for an accidental personal injury sustained by the covered employee; or

(2) the dependents of the covered employee for death of the covered employee:

(i) resulting from an accidental personal injury sustained by the covered employee; and

(ii) occurring within 7 years after the date of the accidental personal injury.

(b) *Employer liable regardless of fault.*—An employer is liable to provide compensation in accordance with subsection (a) of this section, regardless of fault as to a cause of the accidental personal injury.

The portion of § 15 addressing the use of drugs as it pertains to workers' compensation was recodified at § 9–506(b), which states:

*Drugs.*—A covered employee or a dependent of a covered employee is not entitled to compensation or benefits under this title as a result of an accidental personal injury, compensable hernia, or occupational disease if:

(1) the accidental personal injury, compensable hernia, or occupational disease was caused solely by the effect on the covered employee of:

(i) a depressant, hallucinogenic, hypnotic, narcotic, or stimulant drug; or

(ii) another drug that makes the covered employee incapable of satisfactory job performance; and

there is a causal connection between the accidental injury and the employment; the accidental injury must be substantially contributory, though it need not be the sole or proximate cause. *Watson v. Grimm,* 200 Md. 461, 465, 90 A.2d 180 (1952); *Austin v. Thrifty Diversified,* 76 Md.App. 150, 157, 543 A.2d 889 (1988). An injury is said to "arise out of" employment when it results from some obligation, condition or incident of employment. *King Waterproofing Co. v. Slovsky,* 71 Md.App. 247, 252, 524 A.2d 1245 (1987) (*citing Scherr v. Miller,* 229 Md. 538, 543, 184 A.2d 916 (1962); *Pappas v. Modern Mfg. Co.,* 14 Md.App. 529, 532, 287 A.2d 798, *cert. denied,* 265 Md. 741 (1972)). An injury arises "in the course of" employment when it occurs during the period of employment at a place where the employee reasonably may be in the performance of his or her duties and while he or she is carrying out those duties or something incident thereto. *King Waterproofing,* 71 Md.App. at 252, 524 A.2d 1245. The words "out of the employment" and "in the course of the employment" are not synonymous and, since they are used conjunctively, they must both be satisfied in order to be awarded workers' compensation. *Watson, supra,* 200 Md. at 465, 90 A.2d 180. On the other hand, these two requirements need not necessarily be applied independently; "they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." *King Waterproofing, supra,* 71 Md.App. at 252 n. 4, 524 A.2d 1245 (affirming award of workers' compensation to employee injured when struck by an automobile while crossing the street during coffee break) (*quoting* A. Larson, *The Law of Workmen's Compensation,* § 29.00 (1985) ("Larson")).

 ■ The language of § 15 that excludes from coverage injuries that are the "sole" result of intoxication or drug use is stated in § 45 of the same article, which provides:

---

 . (2) the drug was not administered or taken in accordance with the prescription of a physician.

Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any compensation or benefits under this article on account of any injury to or death of an employee caused by self-inflicted injury, the willful misconduct, or where the injury or death resulted solely from the intoxication of the injured employee or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job, *except when such drug has been administered or taken in accordance with a physician's prescription.*

(emphasis added).[5] This provision appears to reiterate, rather than add to, the general principles set forth in § 15. *See* 1972 Md.Laws Ch. 300 (purpose of revisions in § 15, § 45 and § 64(d) is "to provide that no compensation or benefits ... shall be payable on account of any injury to or death of an employee resulting solely from the effect upon him of narcotic, depressant, stimulant, hallucinogenic or hypnotic drugs, except under certain conditions").[6]

The circuit court grounded its partial summary judgment order on its interpretation of § 45, finding that section to stand for the proposition that, "if the *sole* cause of the injury is the prescription drug the injury is compensable." This cryptic holding was adopted, and then interpreted by another circuit court judge, to bar evidence at trial of Beccio's use of Dantrium on the morning of his accident. CAM argues here, as it asserted below, that the circuit

---

**5.** For the legislative history of these provisions, particularly with respect to their relationship to intoxication, see *Karns v. Liquid Carbonic Corp.*, 275 Md. 1, 3–8, 338 A.2d 251 (1975).

**6.** Section 45 was recodified at Md. Labor and Employment Code Ann., § 9–506. Thus, the law within the Workers' Compensation Code excluding coverage in the event that the injury solely resulted from drug use (with the noted exception of prescription drug use), formerly contained in three provisions (Md.Ann.Code art. 101, §§ 15, 45 and 64(d)), was condensed into one.

court "committed error in finding that Section 45 means if the sole cause of an injury is a prescription drug, then the claimant is automatically entitled to compensation." First, the employer contends that such an interpretation conflicts with the second part of § 15, which excludes workers' compensation coverage for persons whose on-the-job injury occurred solely "from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job" without providing an exception for prescription drugs. Second, the employer asserts that the circuit court's interpretation of § 45 failed to take into account the provision within § 15 which holds that the injury must arise "out of" and "in the course of" employment.

The latter argument, although plausible in light of the circuit court's brief holding on partial summary judgment, does not appear to be an accurate characterization of how the trial court or the parties interpreted this holding. If, in fact, the circuit court's holding had meant that, where an injury is solely attributable to prescription drug use, the employee is automatically eligible for workers' compensation, the trial would have proceeded much differently. A reasonable consequence of such a finding would be a trial in which Beccio—not his employer—attempted to show that his injury was caused solely by his use of Dantrium so that he could automatically receive workers' compensation, regardless of whether the injury arose out of and in the course of his job. That did not occur here. Instead, the case proceeded to trial in which the jury was asked to evaluate Beccio's claim in light of the requirement of § 15 that an injury arise "out of" and "in the course of" his employment. Thus, it appears that neither the circuit court nor the parties interpreted the court's partial summary judgment order as removing the requirement in § 15 that an injury "arise out" and be "in the course of employment."

 It is the employer's first argument—that it should have been permitted to present evidence that Dantrium was the sole cause of Beccio's accident—which merits further

examination.[7] Maryland law holds that, where an injury occurs because of a risk or condition personal to an employee (*i.e.*, an idiopathic condition), it does not arise "out of" the employment, and is therefore not compensable under § 15, provided that the employment does not aggravate or contribute to the risk. *See, e.g., Robertson v. North American Refractories Co.*, 169 Md. 187, 181 A. 223 (1935) (where no evidence of accident, injury not compensable). An injury is compensable, however, if the employment placed the employee in a position which aggravated the effects of a fall due to the idiopathic condition, or if the employment precipitated the effects of the condition by strain and trauma. *Bethlehem Steel Co. v. Jones*, 222 Md. 54, 158 A.2d 621 (1960) (employee's death after 13–foot fall caused or hastened by his pneumonia); *Watson v. Grimm*, 200 Md. 461, 90 A.2d 180 (1952) (fall from running board of a moving truck after employee became dizzy); *J. Norman Geipe v. Collett*, 172 Md. 165, 190 A. 836 (1937) (stroke due to shock of barely avoiding an auto accident). Thus, even if the sole *origin* of an employee's injury is idiopathic, the employee may receive workers' compensation as long as "some factor peculiar to the employment" contributed to the injury. *Watson, supra*, 200 Md. at 466, 90 A.2d 180.

---

**7.** Beccio suggests that the employer waived this argument in the following exchange at the hearing on its motion for reconsideration of the grant of partial summary judgment:

EMPLOYER'S COUNSEL: Well, Your Honor, I'm just saying the exception lifts the bar. In other words, you're not allowed comp if the injury is solely caused from a drug.

In other words, it has to be the sole cause—the drug has to be the sole cause of that injury, and you cannot have comp.

THE COURT: How could you ever establish sole cause under these facts and circumstances that you argue here today?

EMPLOYER'S COUNSEL: I wouldn't—no, no. I'm not arguing that. I would not even be trying to argue that.

The problem with this argument is that in the very next sentence the employer's counsel took back this apparent waiver:

I'm just saying that the fact that he took—if the injury was solely caused by the prescription drug, that is not, as a matter of law, compensable injury. So the claimant could not argue that the drug—the drug caused—if it was solely caused from the drug, he's entitled to compensation.

Neither party here directs us to case law or other authority that specifically addresses whether the idiopathic effect of a prescription drug itself must be viewed differently from the impact of the ailment which the drug was prescribed to relieve. General discussions of idiopathic causes of on-the-job injuries, however, indicate that the central question is not the nature of the idiopathic condition, but whether the employment in any way *increased* the severity of the employee's injury. *See* M. Pressman, *Workmen's Compensation in Maryland* § 2–5, at 89 (1977); Larson, § 12.12 ("The basic rule, on which there is now general agreement, is that the effects of [an idiopathic] fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle").

Moreover, nothing in the language of either § 15 or § 45 suggests that, simply because Beccio's fall may have resulted solely from his taking a prescription drug, that condition must be excluded from the jury's consideration. As the employer points out, the latter part of § 15 as quoted above makes no exception for prescription drugs in excluding from coverage injuries that are the sole result of "the effect ... of any ... drug which renders him incapable of satisfactorily performing his job." Accordingly, we see no reason why the employer should not have been permitted to direct the jury's attention to Beccio's taking of Dantrium to treat his toe-walking condition.

(iii)

We issue this opinion with a cautionary note that the employer may not necessarily be assisted here by the opportunity to present evidence of Beccio's use of Dantrium. Beccio presented credible and corroborated evidence to support his position that he tripped on debris; that the darkness of the hallway might have prevented him from seeing the debris and/or breaking his fall; and that the injury was aggravated by the fact that he was carrying tools of his

trade. Moreover, the assertion that Beccio was "dizzy" due to the Dantrium does not necessarily lead to a conclusion that the drug was the sole cause of his fall, or that his injury was not worsened by his work conditions. *See Watson, supra* (idiopathic cause of fall was employee's dizziness; dizziness did not render the injury incompensable); *Crown Textile Co. v. Dial,* 507 So.2d 522 (Ala.Civ.App. 1987) (testimony by claimant that he tripped over something in room in which he fell, breaking hip, and corroborating testimony that there was debris in room supported finding that claimant's disability was caused by job-related injury, despite other evidence that fall was result of epileptic seizure). Unencumbered by his tools in a well-lit hallway, absent debris on the floor, Beccio may have been able to steady himself or break his fall, in the event that the Dantrium did, in fact, make him dizzy.

This case does not appear to be analogous to those in which an employee who suffered a stroke, epileptic seizure, or heart attack was barred from recovery; the record suggests merely that Beccio may have been "dizzy" due to Dantrium, not that he immediately lost consciousness or physical control. To bar Beccio from recovering compensation, the idiopathic condition must be the *sole* cause of injury. It is not sufficient that it is a contributing cause. *See Karns v. Liquid Carbonic Corp., supra,* 275 Md. at 17, 338 A.2d 251 (to serve as bar from compensation, intoxication must be sole cause of injury, not merely contributing factor). On remand, the trier of fact should be mindful of that standard.

JUDGMENT REVERSED AND REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY APPELLEE.